UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETTIE J. HARRIS, deceased,
REGINALD WATKINS and
MICHAEL HARRIS,                            Case No. 19-12935

             Plaintiffs,            Paul D. Borman
                                           United States District Judge
v.

U.S. BANK NATIONAL
ASSOCIATION, as Trustee for the
Structured Asset Investment Loan Trust
Mortgage Pass-Through Certificates,
Series 2004-2, and SELECT
PORTFOLIO SERVICING, INC.,

             Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 5)

This action arises out of a completed foreclosure of real property. Plaintiffs,

claimed heirs to the deceased property owner, challenge the validity of the

foreclosure of the property based on alleged procedural errors and the improper

handling of purported loan modifications. They name as defendants the entity that

foreclosed on the property, US Bank, and the servicer of the mortgage loan, Select

Portfolio, in an attempt to restore title to the property in the Heirs-Plaintiffs' names.

1

Now before the Court is Defendants' motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The motion is fully briefed. The Court held a hearing using Zoom videoconference technology on September 16, 2020, at which counsel for Plaintiffs and Defendants appeared. For the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 5).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs' Complaint

This case involves real property commonly known as 104 Westway, Pontiac, Michigan 48342 (the "Property"). (ECF No. 1-1, Plaintiffs' Complaint ¶ 7, PgID 7.) On or about November 13, 2003, Plaintiff Bettie J. Harris (the "Borrower"), obtained a loan in the amount of $86,400.00 (the "Loan") from BNC Mortgage, Inc. (the "Lender"), which was evidenced by a note (the "Note") (ECF No. 5-2, Note, PgID 84-87), and secured by a mortgage (the "Mortgage") in favor of the Mortgage Electronic Registration Systems, Inc. ("MERS"). (ECF No. 5-3, Mortgage, PgID 89-106.) The Mortgage was recorded on March 3, 2004, in Liber 32367, page 411, Oakland County Register of Deeds.  (*Id.*)

Harris passed away on November 4, 2015. (Compl. ¶ 12, citing Ex. 3, Certificate of Death, PgID 28.)

2

On October 26, 2018, the Mortgage was assigned to Defendant U.S. Bank National Association, as Trustee for the Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2004-2 ("US Bank"), via Assignment of Mortgage, which was recorded on November 15, 2018, in Liber 52365, Page 618, Oakland County Register of Deeds. (ECF No. 5-5, Corporate Assignment of Mortgage ("Assignment"), PgID 110.) Defendant Select Portfolio Servicing, Inc. ("SPS") is the servicer of the Mortgage Loan. (*Id.*)

Harris defaulted on her Loan, and, as a result, US Bank initiated foreclosure by advertisement proceedings. A Notice of Foreclosure was published weekly in the Oakland County Legal News on December 3, December 10, December 17, and December 24, 2018. (ECF No. 1-1, Ex. 2 to Complaint, Sheriff's Deed on Mortgage Foreclosure, PgID 22.) On December 5, 2018, the Notice of Foreclosure was posted in a conspicuous place on the subject premises. (*Id.* at PgID 23.)

A sheriff's sale occurred on January 22, 2019 (the "Sheriff's Sale"), where US Bank purchased the Property for $46,400.00 and received a Sheriff's Deed on Mortgage Foreclosure (the "Sheriff's Deed") in exchange. (*Id.* at PgID 17-26.) The Sheriff's Deed was recorded on January 29, 2019. (*Id.*) The six-month statutory redemption period expired on July 22, 2019. (*Id.*) The Property was not redeemed and Plaintiffs do not allege they attempted to redeem the Property during that time.

(*See* Compl.; *see also* ECF No. 7, Pls.' Resp. at p. 13, PgID 230 ("Plaintiffs did not redeem the property, because the Plaintiff, Bettie J. Harris was deceased and could not redeem the property.").)

Plaintiffs Reginald Watkins and Michael Harris claim an interest in the Property solely as "Heirs of Bettie J. Harris." (Compl. ¶ 9, PgID 8.) The Heirs-Plaintiffs claim that they attempted to work out a financial accommodation in order to save the property before and after the Sheriff's Sale, and that SPS was amenable to the financial accommodation, but that Defendant US Bank nevertheless went through with the Sheriff's Sale. (*Id.* ¶¶ 14-16, citing Ex. 4, PgID 30, 32-33.) Plaintiffs assert they have "suffered prejudice in that they would have been in a better position to preserve their interest in the real property 1.) if Defendant(s) had not gone forward with the Sheriff's Sale without proper notice, and 2.) if before the Sheriff's Sale Defendant(s) had allowed Plaintiffs to complete the financial accommodation or had allowed Plaintiffs to reinstate the loan, and not having gone forward with the Sheriff's Sale during the financial accommodation process or 'Dual Tracking.'" (*Id.* ¶ 19, PgID 8-9.) Plaintiffs further assert that "there are [unidentified] tenants currently residing in the subject property who are in danger of being evicted in violation of the Protecting Tenants at Foreclosure Act." (*Id.* ¶ 18, PgID 8.)

### B.    Procedural History

Plaintiffs filed this action in the Oakland County Circuit Court on or about August 23, 2019, and Defendants timely removed it to this Court based on federal question jurisdiction on October 8, 2019. (ECF No. 1.) Plaintiffs allege the following counts: Count I – Quiet Title; Count II – Breach of MCL § 600.3208; Count III – Breach of Request for Mortgage Assistance; and, Count IV – Injunction and Other Relief. (ECF No. 1-1, Compl.)

Defendants filed the present Motion to Dismiss on November 21, 2019. (ECF No. 5, Defs.' Mot.) Plaintiffs filed their Response to Defendants' Motion and Request to Extend the Expiration of the Redemption Period and Request for Facilitation on December 12, 2019 (ECF No. 7, Pls.' Resp.), and Defendants filed their Reply on March 12, 2020 (ECF No. 11, Defs.' Reply).

## II.  STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), including challenges to standing, "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); *see also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("Standing goes to [a c]ourt's subject matter jurisdiction."). Under a facial

5

attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Under a factual attack, however, "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* Where the defendant brings a factual attack on the subject matter jurisdiction, "no presumptive truthfulness applies to the allegations" of the complaint and the court may consider documentary evidence in conducting its review. *Id.* If the district court must weigh conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist, it "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

### B.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir.

7

2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86,

89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534

U.S. 506 (2002).

Based on the above, in addition to Plaintiffs' allegations in their Complaint,

and the documents attached to the same, the Court will also consider three additional

documents attached to Defendants' motion which are referenced in the pleadings

and central to Plaintiffs' claims and/or publicly-available documents: (1) the Note,

(2) the Mortgage, and (3) the Assignment.  (ECF Nos. 5-2, 5-3 and 5-5, Defs.' Mot.

Exs. 1, 2 and 4.)

### III.  ANALYSIS

### A.    The Heirs-Plaintiffs' Article III Standing to Bring Claims Challenging the Foreclosure

Defendants argue that "it is uncontested that the Heirs-Plaintiffs [Reginald

Watkins and Michael Harris] are not a party to the Note or the Mortgage" and that

they therefore lack standing, in their individual capacities or as "Heirs of Bettie J.

Harris [Borrower]" to assert claims related to the foreclosure of the Mortgage.

(Defs.' Mot. at pp. 6-7, PgID 63-64.) Defendants assert that under Michigan law, "to

be effective to prove the transfer of property, or to nominate a personal

representative, a will must be declared valid by a register's order or informal probate

or by a court's adjudication of probate," and that the Heirs-Plaintiffs have not

pleaded that a court appointed either of them as a personal representative of the estate

9

of Borrower Bettie J. Harris or any facts to show that they have a legal interest in the Property. (*Id.* at pp. 7-8, citing Mich. Comp. Laws § 700.3102.)

The United States Supreme Court has noted that standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury[.]" *Coyne v. American Tobacco Co.*, 183 F.3d 488, 484 (6th Cir. 1999) (citations omitted). In addition, "a plaintiff must 'assert his own legal rights and interest, and cannot rest his claim to the relief on the legal rights and interest of third parties." *Id.* The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). "[S]tanding cannot be inferred … from averments in the pleadings, but rather must affirmatively appear in the record." *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998) (internal quotation marks omitted).

In this case, the Heirs-Plaintiffs' claims arise from the Mortgage signed by the decedent Borrower, Bettie J. Harris. The Heirs-Plaintiffs plead that they "claim a[n] interest in the subject property as follows: Heirs of Bettie J. Harris." (Compl. ¶ 9,

10

PgID 8.) Plaintiffs have not otherwise pleaded a possessory or ownership interest in the Property and have not pleaded any facts to show that they have a legal interest to the Property. Neither of the Heirs-Plaintiffs was a party to that Mortgage and they have not pleaded that a court has appointed either of them as a personal representative of the estate of Borrower Bettie J. Harris.

Under Michigan law, "to be effective to prove the transfer of property, or to nominate a personal representative, a will must be declared valid by a register's order of informal probate or by a court's adjudication of probate." Mich. Comp. Laws § 700.3102. Plaintiffs have not pleaded that the Borrower had a will that was declared valid or that her estate went through probate proceedings, and they therefore cannot assert any claims against the Mortgage in this Court. *See Sesi v. Fannie Mae*, No. 10-12966, 2012 WL 831759, at *6 (E.D. Mich. Mar. 12, 2012) ("Because the plaintiff [son] cannot establish that he has an interest [on behalf of his deceased parents] in the property that was the subject of foreclosure, nor did he have the authority to speak as a representative of his deceased parents' estate, he cannot show that he himself suffered an injury in fact; nor can he show that he is attempting to enforce his *own* legal rights or that his complaints falls within the zone of interests protected by the law he has invoked" and thus he "has no standing.") (emphasis in original); *see also Roberts v. Fed. Nat'l Mortg. Assoc.*, No. 18-10740, 2018 WL

11

1399264, at *2 (E.D. Mich. Mar. 20, 2018) (collecting cases holding that "tenants, like plaintiff, lack standing to challenge the validity of a foreclosure of that property"); *Dietrich v. JPMorgan Chase Bank, N.A.*, No. 16-cv-13566, 2017 WL 57240, at *3 (E.D. Mich. Jan. 5, 2017) (holding plaintiff (property owner's father) "fails to meet the requirements of Article III standing" because "[i]n contrast to owners, … mere occupants or tenants of a property lack standing to challenge a foreclosure"); *Hurst v. Fed. Nat'l Mortg. Assoc.*, 14-CV-10942, 2015 WL 300275, at *3 (E.D. Mich. Jan. 22, 2015) (collecting cases holding that tenants, who have no purchase interest in the property at issue, lack standing to challenge the validity of a foreclosure of that property), *aff'd*, 642 F. App'x 533 (6th Cir. 2016); *but see United States v. Currency $267,961.07*, 916 F.2d 1104, 1107 (6th Cir. 1990) (commenting that a "property interest less than ownership, such as a possessory interest, is sufficient to create [constitutional] standing" to challenge a judicial foreclosure proceeding).

Given the lack of evidence noted above that the Heirs-Plaintiffs have any type of ownership or possessory interest in the Property, the Court finds that Plaintiffs have failed to demonstrate that they have suffered an injury in fact and that they have Article III standing to bring their claims in this case. However, even if the Heirs-Plaintiffs could demonstrate some sort of possessory interest in the subject Property

sufficient to establish Article III standing, their claims are nevertheless dismissed for the reasons that follow.

**B.    The Statutory Redemption Period Has Expired and Plaintiffs Fail to Allege Facts Sufficient to Set Aside the Valid Sheriff's Sale**

Plaintiffs seek to set aside the completed Sheriff's Sale of the Property and to "[g]rant[] Plaintiffs all legal title to the subject property," (Compl. ¶¶ 30, 34, 41, Counts I - III), and seek to "stay[] and toll[] the expiration of the Redemption Period." (*Id.* ¶ 51, Count IV.) Defendants argue that all of Plaintiffs' claims fail because the statutory redemption period has expired and Plaintiffs have failed to allege facts sufficient to set aside the valid Sheriff's Sale.

**1.    Plaintiffs failed to timely redeem the Property**

Foreclosures by advertisement are governed by statute under Michigan law. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (citing *Munaco v. Bank of America*, 513 F. App'x 508, 511 (6th Cir. 2013)). These statutes set forth "certain steps that the mortgagee must go through in order to validly foreclose" and provide the mortgagor six months after the sheriff's sale in which to redeem the foreclosed property. *Id.* (citing Mich. Comp. Laws § 600.3240(8) and *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949, 951 (6th Cir. 2012), *abrogated on other grounds by Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115 (2012)). "Once this statutory redemption period lapses, however, the

mortgagor's right title, and interest in and to the property are extinguished." *Id.* (internal quotations omitted).

After this, the mortgagor must clear a high bar to have the foreclosure and sale reversed. *See Conlin*, 714 F.3d at 359 (explaining that "the ability for a court to set aside a sheriff's sale has been drastically circumscribed") Specifically, "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Id.* (quoting *Schulthies v. Barron*, 16 Mich. App. 246, 247-48 (1969)). But not any type of fraud will suffice; rather, "the misconduct must relate to the foreclosure procedure itself." *Id.* at 361. In addition, plaintiffs seeking to set aside a foreclosure sale "must show that they were prejudiced by defendant's failure to comply with [the foreclosure-by-advertisement statutes]. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115-16 (2012).

In this case, the Sheriff's Sale took place on January 22, 2019, and the redemption period expired on July 22, 2019. (Sheriff's Deed, PgID 21-26.) Plaintiffs did not redeem the Property prior to the expiration date of the redemption period, and did not even file their Complaint in this action until on or about August 23, 2019,

14

a month after the expiration of the redemption period. (See Compl.) Therefore, Plaintiffs can only challenge the foreclosure if they make a "clear showing of fraud, or irregularity" relating to the foreclosure proceeding itself, and that they were prejudiced. *Conlin*,  714 F.3d at 359-61.[1]

### 2.    Plaintiffs fail to plausibly allege fraud or irregularity in the foreclosure process

Plaintiffs allege that: (1) Defendants "failed to post a true copy [of the Notice] in a conspicuous place upon any part of the premises described in the Notice that the mortgage will be foreclosed by a sale of the mortgaged premises in violation of MCLA 600.3208;" and that (2) Defendants engaged in "Dual Tracking."  (Compl. ¶¶ 17, 24, 27-28, 33, 39-40.)  Neither of these allegations are sufficient to set aside a completed Sheriff's Sale.

### a.    Notice of foreclosure allegation

Plaintiffs challenge the Sheriff's Sale based on alleged failure to post a notice of the foreclosure. Plaintiffs also assert a separate claim for "Breach of MCL 600.3208" (Count II), claiming that they did not receive proper notice of the

---

[1] To the extent Defendants argue that Plaintiffs lack statutory standing to challenge the completed foreclosure because the statutory redemption period has expired (Defs.' Mot. at pp. 9-10, PgID 66-67), the Sixth Circuit has stated that the expiration of the statutory redemption period does not create a standing issue.  *See Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 497 (6th Cir. 2014).

foreclosure. Michigan law requires the notice of foreclosure to be published for four successive weeks, at least once per week, in a newspaper published in the county where the premises to be sold are situated. Mich. Comp. Laws § 600.3208. Additionally, a notice of foreclosure must be posted "in a conspicuous place upon any part of the premises described in the notice" within fifteen days after the first publication of the notice." *Id.*

The Sheriff's Deed, attached as an exhibit to Plaintiffs' Complaint, includes an affidavit of publication by Cindy C. Lawler and an affidavit of posting by Nate Cook. (Compl. Ex. 2, PgID 22-23.) The affidavit of publication states that the notice "was published in Oakland County Legal News[,] a newspaper circulated in Oakland County[,] on December 3, December 10, December 17, December 24, 2018 A.D." (*Id.* at PgID 22.) In the affidavit of posting, Nate Cook avers that "on the 5th date of December, 2018 A.D." he "posted a notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said notice by attaching the same in a secure manner to 140 Westway, Pontiac, MI 48342." (*Id.* at PgID 23.) The notice, included on the same page of the Sheriff's Deed as Cook's affidavit, identified the premises and stated that a foreclosure sale was to be held on January 22, 2018, and that the redemption period "shall be 6 months from the date of such sale[.]" (*Id.*)

Plaintiffs' allegation that they did not receive proper notice of the foreclosure sale therefor conflicts with the affidavits in the Sheriff's Deed. However, in such a case, the affidavit prevails. Mich. Comp. Laws § 600.3256(1)(c) provides that "[a]ny party desiring to perpetuate the evidence of any sale made in pursuance of the provisions of this chapter, may procure … [a]n affidavit setting forth the time, manner and place of posting a copy of such notice of sale to be made by the person posting the same." Further, Mich. Comp. Laws § 600.3264 provides that such affidavits "shall be presumptive evidence of the facts therein contained." Accordingly, Plaintiffs' conclusory allegations that they did not receive the statutorily-required notice do not serve to rebut the affidavits included in the Sheriff's Deed. *See Crowton v. Bank of America*, No. 18-cv-10232, 2019 WL 423505, at *3 (E.D. Mich. Feb. 4, 2019) (citing *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 956 (6th Cir. 2014) ("[T]he bare assertion that the defendants failed to give 'required notices' does not meet the minimal pleading standards of Rule 8. More importantly, the sheriff's deed reflecting the foreclosure sale shows that the [plaintiffs] were given the statutorily required notices.")); *Haywood v. RoundPoint Mortg. Serv. Corp.*, No. 18-10111, 2018 WL 3159624, at *4 (E.D. Mich. June 28, 2018) (where plaintiff alleged that notice of intent to foreclose was not posted on the

property, and defendant provided a copy of the affidavit in the Sheriff's Deed attesting that it was, "[t]he affidavit prevails").

Therefore, Plaintiffs have failed to allege an irregularity in the foreclosure proceedings such that the foreclosure should be set aside after the redemption period has expired based on their alleged failure of notice, and their claim for "Breach of MCL 600.3208" (Count II) is dismissed.

### b.    "Dual Tracking" allegations

Plaintiffs also challenge the Sheriff's Sale based on allegations of "Dual Tracking" – that Defendants instituted the foreclosure proceedings at the same time that Plaintiffs were seeking a loan modification. (Compl. ¶¶ 14-17, 22-24, PgID 8-9.) Plaintiffs also allege a separate claim in their Complaint titled "Breach of Request for Mortgage Assistance" (Count III) based on their "Dual Tracking" allegations. (*Id.* ¶¶ 35-41, PgID 11-13.) Plaintiffs allege that they "relied, to their detriment, upon the representations of Defendant, SPS" that it was amenable to financial accommodations, and assert that they "would not have attempted to utilize the financial accommodation if Plaintiffs had known that Defendant, SPS, would proceed, nonetheless, with the Foreclosure during this time[.]" (*Id.* ¶ 40.) Plaintiffs claim that Dual Tracking is "precluded under the terms of the National Mortgage

Settlement of 2012, amendments to Reg. X of the Real Estate Settlement and Procedures Act, (12 C.F.R. part 1024)" ("RESPA").  (*Id.*)

> ### i.  *Plaintiffs' "dual-tracking" allegations are insufficient to set aside the mortgage foreclosure*

As explained above, "not just any type of fraud [or irregularity] will suffice to set aside a foreclosure. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Conlin*, 714 F.3d at 361 (citation omitted). There is an important distinction between loan modification irregularities and foreclosure irregularities, and "[a]n alleged irregularity in the loan modification process … does not constitute an irregularity in the foreclosure proceeding." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 294 (6th Cir. 2015) (citing *William v. Pledged Prop. II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012)). "Following these principles, courts in th[is] District have consistently held that the practice of 'dual tracking' – *i.e.,* 'a common tactic by banks [of] institut[ing] foreclosure proceedings at the same time that a borrower in default seeks a loan modification' – 'relate[s] to the loan modification process rather than the foreclosure process,' and is therefore not a valid basis for setting aside a foreclosure sale for fraud or irregularity." *Haywood*, 2018 WL 3159624, at *3-4 (collecting cases, and finding "[t]he decisions discussed above make clear that dual-tracking allegations do not amount to allegations of fraud or irregularity in the foreclosure process, which are required to set aside a foreclosure by

19

advertisement."); *Buttermore v. Nationstar Mortg., LLC*, No. 16-14267, 2017 WL 2306446, at *3-4 (E.D. Mich. May 26, 2017) ("Courts in this District have repeatedly held that dual-tracking allegations do not constitute allegations of irregularities in the foreclosure process, as required to set aside a foreclosure by advertisement.").

Therefore, the Complaint's "dual-tracking' allegations do not constitute allegations of irregularities in the foreclosure process, as required to set aside a foreclosure by advertisement. And, as Plaintiffs have failed to sufficiently plead claims of fraud or irregularity in the foreclosure process, their challenges to the validity of the foreclosure under Michigan law fail as a matter of law.

> ### ii. Plaintiffs' "Breach of Request for Mortgage Assistance" claim (Count III) fails to state a claim

Next, Plaintiffs' broad allegations in Count III of their Complaint, "Breach of Request for Mortgage Assistance," that "dual tracking" is "precluded under the terms of the National Mortgage Settlement of 2012, amendments to Reg. X of the Real Estate Settlement and Procedures Act, (12 CFR part 1024)"[2] are insufficient to state a claim against Defendants.

---

[2] Regulation X's enabling statute is the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605.

As a threshold issue, and as Defendants contend, there does not appear to be a cause of action under Michigan law for "breach of request for mortgage assistance." "There is no provision found in RESPA under which Plaintiff[s] can seek to have foreclosure proceedings nullified, or force Defendants to negotiate a loan modification." *Caggins v. Bank of N.Y. Mellon*, No. 15-11124, 2015 WL 4041350, at *2 (E.D. Mich. July 1, 2015); *see also Servantes v. Caliber Home Loans, Inc.*, No. 14-cv-13324, 2014 WL 6986414, at *1 (E.D. Mich. Dec. 10, 2014) (dismissing RESPA claim "because the principal relief sought by Plaintiffs – to stay or set aside the sheriffs sale, or alternatively, to permit the matter to proceed to judicial foreclosure – is unavailable to them under RESPA").

To the extent Plaintiffs purport to allege a violation of Reg. X, Plaintiffs fail to specify which provision(s) of 12 C.F.R. Part 1024 they allege were violated. Narrowing Plaintiffs' claim to the only RESPA section providing for a private right of action – those regulations related to "Mortgage Servicing," 12 C.F.R § 1024. 41 ("Loss mitigation procedures")[3] – that provision states, in part:

> Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation

---

[3] *See Buttermore*, 2017 WL 2306446, at *7 (recognizing that under Regulation X, only 12 C.F.R. § 1024.41 can be the basis for a private action).

for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

12 C.F.R. § 1024.41(a). In addition, a servicer is only required to follow the procedures described in the loss mitigation rule for a single "complete loss mitigation application." 12 C.F.R. § 1024.41(l). Therefore, the rule does not require that the borrower actually receive a loan modification; rather, it merely requires that a *completed* application be properly processed and considered.

Plaintiffs' Complaint fails to allege any specific financial accommodation that was discussed or allegedly offered, and does not allege that Plaintiffs submitted a "complete loss mitigation application," as required by § 1024.41(b)(1), but instead only alleges that Plaintiffs "attempted to utilize" or "attempted to work out" a financial accommodation. (Compl. ¶¶ 36, 38, 40.) A party must allege that she submitted "[a] complete loss mitigation application" as a prerequisite for recovery under 12 C.F.R. § 1024.41(g), and failure to submit a complete loss mitigation application is fatal to claims brought under 12 C.F.R. § 1024.41(g). *See Rader v. Ditech Fin., LLC*, No. 17-13566, 2018 WL 6589982, at *4 (E.D. Mich. Dec. 14, 2018) (finding that, even taking plaintiff's allegations that the parties were actively engaged in loan modification, "without knowing the date of [plaintiff's] completed loss mitigation application, this RESPA claim is not plausible"); *Burns v. Deutsche Bank Nat. Trust Co.*, No. 1:15-CV-264, 2015 WL 4903422, at *2 (W.D. Mich. Aug.

22

17, 2015) ("Section 1024.41(g) does not apply, however, because Plaintiffs do not allege that they submitted a complete loss-mitigation application more than 37 days prior to the foreclosure sale."). Plaintiffs' claim therefore is dismissed for failure to state a claim.[4]

Therefore, for all these reasons, Plaintiffs' claim founded upon RESPA and/or Regulation X in Count III of their Complaint fails as a matter of law.

### 3.   Plaintiffs fail to sufficiently allege prejudice

Even if Plaintiffs sufficiently alleged fraud or irregularities with the foreclosure process (which they have not), their request to set aside the Sheriff's Sale still fails because they have not alleged any specific prejudice as a result. *See Conlin*, 714 F.3d at 361 (stating that, in addition to alleging an irregularity in the foreclosure, a plaintiff must allege that they were prejudiced as a result of the defect and that they

---

[4] To the extent Plaintiffs allege that Defendants made an oral promise of accommodation, such a claim would be barred by the Michigan financial statute of frauds, Mich. Comp. Laws § 566.132(2), which "plainly states that a party is precluded from bringing a claim – no matter its label – against a financial institution to enforce the terms of an oral promise[.]" *Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550 (2000); *see Hubbard v. Select Portfolio Serv., Inc.*, No. 16-11455, 2017 WL 9470640 (E.D. Mich. Mar. 16, 2017) (SPS, a "registered mortgage servicer," is a "financial institution" within the meaning of Mich. Comp. Laws § 566.132(3)), *report and recommendation adopted by* 2017 WL 3725475 (E.D. Mich. Aug. 30, 2017), *aff'd*, 736 F. App'x 590 (6th Cir. 2018).

"would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute").

The only allegation of prejudice connected to Plaintiffs' claims in the Complaint is their bald assertion that they "would have been in a better position to preserve their interest in the real property" if Defendants had not gone forward with the Sheriff's Sale or had allowed Plaintiffs to "complete the financial accommodation" or "to reinstate that loan." (Compl. ¶ 41, PgID 12.) Plaintiffs restate these conclusory allegations in their Response brief. (Pls.' Resp. at p. 21, PgID 238; *see id.* at p. 25, PgID 242 (claiming that "[t]hey may have been able to procure the money to reinstate the loan, but they were unsure of the status of the loan").) Plaintiffs' allegations do not elaborate on these bare and formulaic statements, or otherwise explain why it was the case. This sort of allegation does not plead the requisite prejudice with sufficient plausibility. *See Wypych v. Deutsche Bank Nat'l Trust Co. on behalf of Holders of the Accredited Mortg. Loan Trust 2005-2 Asset Backed Notes*, No. 16-cv-13836, 2017 WL 1315721, at *5 (E.D. Mich. Apr. 10, 2017) ("Here, [the plaintiff] has not alleged prejudice.  He alleges only that absent the alleged irregularities, he 'may' have been in a position to avoid foreclosure …. That is not enough."); *Goodman v. Citimortgage, Inc.*, No. 15-12456, 2015 WL 6387451, at *3 (E.D. Mich. Oct. 22, 2015) (plaintiffs did not sufficiently allege

24

prejudice when they "fail[ed] to suggest how, if at all, they would have been in a better position had [the defendant] complied with the notice requirements under Mich. Comp. Laws § 600.3204"); *Thomas v. JPMorgan Chase Bank, N.A.*, No. 14-CV-14183, 2015 WL 8965629, at \*5 (E.D. Mich. Dec. 16, 2015) (finding plaintiffs failed to sufficiently allege prejudice where they "made no allegation that they possessed the funds to bring the Loan current prior to the Sheriff's Sale, that they attempted to redeem the Property following the sale or would have been able to make the payment necessary to redeem, or that they were in any way negatively impacted by Defendants' failure to include Bernice Thomas's name on the notice of foreclosure").

Plaintiffs' remaining arguments in their Response brief regarding common law negligence have nothing to do with prejudice under Michigan's foreclosure statutes. (See Pls.' Resp. at pp. 21-23, PgID 238-40, citing *Loewke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157 (2011) (holding that whether a subcontractor owed a common law duty to avoid physical harm to its employee was not governed by the contents of a contract between the subcontractor and contractor).) Plaintiffs do not allege a claim of negligence against Defendants, and, as Defendants point out in their reply brief, Plaintiffs never even use the words "duty" or "negligence" in their Complaint. (See Defs.' Reply at p. 5, PgID 283.)

Plaintiffs' reliance on the out-of-circuit case, *Speleos v. BAC Home Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 311 (D. Mass 2010), in which that district court found that the plaintiffs stated a negligence claim in a foreclosure action against lenders and services, is similarly misplaced. As Defendants properly explain in their reply brief, *Speleos* is an outlier and does not support Plaintiffs' position. (Defs.' Reply at p. 4 & n.2, PgID 282.) Indeed, the holding in *Speleos* "has essentially been overruled by the First Circuit" in *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 495-96 (1st Cir. 2013) (rejecting a HAMP-based negligence claim). *Santos v. U.S. Bank Nat'l Assoc.*, 89 Mass. App. Ct. 687, 699-700 & n. 13 and 14 (2016). In addition, another court in this District previously declined to follow *Speleos*, dismissing the plaintiff's negligence claim and noting "the overwhelming case law finding that plaintiffs do not have a private right of action to sue for a violation of HAMP." *Ahmad v. Wells Fargo Bank, NA*, 861 F. Supp. 2d 818, 827-28 (E.D. Mich. 2012) (citations omitted).

Therefore, Plaintiffs have failed to allege facts sufficient for this Court to set aside the valid Sheriff's Sale, and because the Property was not redeemed within the six-month redemption period, Plaintiffs have no legally protected interest in the Property.

## C.     Plaintiffs' Quiet Title Claim (Count I)

Defendants argue that the Court should dismiss Plaintiffs' quiet title claim (Count I) for the additional reason that quiet title is a remedy, not a separate cause of action under Michigan law. (Defs.' Mot. at p. 17, PgID 74, citing, in part, *Goryoka v. Quicken Loans, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013).)[5] Defendants further contend that Plaintiffs fail to allege facts sufficient for this Court to quiet title to the Property in themselves and that the doctrine of unclean hands should prevent the Court from quieting title of the Property with Plaintiffs. (*Id.* at pp. 17-19, PgID 74-76.) In Plaintiffs' Response, they assert that they have established a breach of Mich. Comp. Laws § 660.2932 (Pls.' Resp. at pp. 17-18, PgID 234-35) (although Plaintiffs fail to expressly mention that statute in their Complaint). Plaintiffs contend in their Response that they are "in possession of the land and claiming 'title to' or an 'interest' in the land … until such time as a court concludes that the Defendants properly performed the foreclosure by advertisement." (*Id.*)

In Michigan, "[a]ny person … who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts

---

[5] Defendants cite to an unpublished Sixth Circuit opinion holding that quiet title is a remedy, not a separate cause of action. (Defs.' Mot. at p. 17, PgID 74, citing *Goryoka v. Quicken Loans, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013).) *See also Jarbo v. Bank of New York Mellon*, 587 F. App'x 287, 290 (6th Cir. 2014) ("Like a request for an injunction or disgorgement, a request for quiet title is only cognizable when

against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff[.]" Mich. Comp. Laws § 600.2932(a). "In Michigan, a plaintiff suing to quiet title has 'the burden of proof and must make out a prima facie case of title.'" *Nance v. Bank of Am., N.A.*, 638 F. App'x 476, 479 (6th Cir. 2016) (citation omitted). "If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n*, 236 Mich. App. 546, 550 (1999) (citation omitted). "Establishing a prima facie case of title requires a description of the chain of title through which ownership is claimed." *Sembly v. U.S. Bank Nat. Ass'n*, No. 11-12322, 2012 WL 32737, at *3 (E.D. Mich. Jan. 6, 2012), *aff'd sub nom.*, *Sembly v. U.S. Bank Nat. Ass'n ND*, 508 F. App'x 443 (6th Cir. 2012) (citations omitted). In addition, Michigan Court Rule 3.411 provides that complaints asserting quiet-title claims under Mich. Comp. Laws

---

paired with some recognized cause of action."). However, "[c]ourts in this district have held that the statute does create a cause of action for quiet title and have addressed it 'in the interest of completeness' even in light of *Jarbo* and *Goryoka*." *Bell v. Cameron-Hall*, No. 14-cv-11486, 2015 WL 4617424, at *4 (E.D. Mich. July 31, 2015) (citing *Berry v. Main St. Bank*, 977 F. Supp. 2d 766, 776 (E.D. Mich. 2013 ("Michigan law does, however, provide a statutory mechanism for quieting title, which the Court addresses in the interest of completeness."))); *see also Gagacki v. Green Tree Servicing LLC*, No. 14-11378, 2015 WL 93476, at *3 n.1 (E.D. Mich. Jan. 7, 2015)). This Court likewise will address Plaintiffs' quiet title claim "in the interest of completeness."

§ 600.2932 must allege "(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." Mich. Ct. R. 3.411(B)(2).

As explained above, Plaintiffs have failed to allege facts sufficient for this Court to set aside the valid Sheriff's Sale, and because the Property was not redeemed within the six-month redemption period, Plaintiffs have no legally protected interest in the Property as a matter of law, and their request that the Court "quiet title" in their favor is denied. *See Wilson v HSBC Bank, N.A.*, 594 F. App'x 852, 857 (6th Cir. 2014) ("Because Wilson did not redeem the property within the six-month statutory redemption period, she currently has no title to the property and cannot state a claim to quiet title against HSBC."); *Buttermore*, 2017 WL 2306446, at *12 (dismissing quiet title claim because plaintiff failed to establish title to the subject property as he failed to assert a basis for setting aside the foreclosure by advertisement and he lost title to the property when the redemption period ran out).

### D.      Plaintiffs' Claim for Injunctive Relief (Count IV)

Plaintiffs request in Count IV of their Complaint an injunction "[s]taying and [t]olling the [e]xpiration of the Redemption Period." (Compl. ¶ 51, PgID 14.) However, as Defendants correctly note, the statutory redemption period expired over

29

a month before Plaintiffs' filed their Complaint and thus there is no expiration date to toll.

Further, as Defendants correctly argue, Plaintiffs' claim for injunctive relief fails because "'an injunction is a form of remedy, not a separate cause of action.'" (Defs.' Mot. at pp. 19-20, PgID 76-77, quoting *Underwood v. Wells Fargo Home Mortg., Inc.*, No. 16-10226, 2016 U.S. Dist. LEXIS 74343, *14-15 (E.D. Mich. 2016).) *See Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 n.1 (E.D. Mich. 2015) ("Injunctive relief is a remedy, however, not an independent cause of action.") (collecting cases); *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013) (holding in a foreclosure-by-advertisement case that where the plaintiff argued "that the district court erred in dismissing her requests to quiet title and for injunctive relief," the district court "correctly found that these requests are remedies and are not separate causes of action" and dismissed the claims accordingly).

### E.    "Claims" Asserted For First Time in Plaintiffs' Response Brief

Plaintiffs appear to assert new claims for the first time in their Response brief for promissory estoppel, breach of duty of good faith, breach of contract, fraud and judicial foreclosure. (Pls.' Resp. at pp. 18-19, 24-26, PgID 235-36, 241-43.) These claims were not asserted in Plaintiffs' Complaint and may not be considered when asserted for the first time in a response brief. *See Guzman v. Dep't of Homeland Sec.*,

679 F.3d 425, 429 (6th Cir. 2012) (declining to review claim made for first time in response to defendants' motion to dismiss because when ruling on a motion under 12(b)(6), "courts consider whether the *complaint* states a claim upon which relief could be granted, not whether the plaintiff has stated–or could state–such a claim elsewhere." ) (emphasis in original); *Kumar v. U.S. Bank Nat'l Assoc.*, 555 F. App'x 490, 492 (6th Cir. 2014) (holding that plaintiff's "failure to raise this claim in the amended complaint or to seek leave to amend forecloses its consideration here"). The Court therefore declines to consider these claims.

Moreover, a fraud claim fails as a matter of law.  Fed. R. Civ. P. 9(b) governs fraud claims and "[r]equire[s] that a plaintiff allege the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 430 (6th Cir. 2014) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). "If a complaint alleging fraud does not conform to the strictures of Rule 9(b), it is subject to dismissal. *See id.* Plaintiffs fail to allege any of these fact and accordingly fail to plead a fraud claim with the specificity required under Rule 9(b).

In addition, Plaintiffs' argument for the first time in their Response that they are entitled to judicial foreclosure also fails because the rule in Michigan is that "any

conversion to a judicial foreclosure, if allowed, must occur *before* the redemption period expires (or earlier)." *Haskins v. Wilmington Sav. Fund Soc'y*, No. 1:16-cv-941, 2017 WL 1396149, at *7 (W.D. Mich. Jan. 5, 2017) (emphasis added); *see also Miller v. The Bank of New York Mellon*, No. 19-12826, 2020 WL 475324, at *9 (E.D. Mich. Jan. 29, 2020) (holding plaintiff failed to state a claim for judicial foreclosure because "[t]here is nothing in the foreclosure statutes providing for the conversion of a foreclosure by advertisement to a judicial foreclosure" and "[e]ven if there were legal grounds to convert the foreclosure to a judicial foreclosure, there is no foreclosure to convert" because "the house has already been foreclosed upon and the statutory redemption period has expired") (internal quotation marks and citations omitted).[6]

---

[6] The statute that allowed the conversion of a pending foreclosure by advertisement to a judicial foreclosure, Mich. Comp. Laws § 600.3205(c), has been repealed and "no longer offers any possible remedy" to Plaintiffs. *See Winters v. Deutsche Bank Nat'l Tr. Co.*, No. 15-13456, 2016 WL 5944717, at *4 (E.D. Mich. Sept. 14, 2016) (dismissing plaintiff's claim for "equitable mortgage and/or for conversion to judicial foreclosure under M.C.L. § 600.3101, *et seq.*" because "[t]he Court cannot give power to a repealed statute"), *report and recommendation adopted by* 2016 WL 5930528 (E.D. Mich. Oct. 12, 2016).

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 5). Plaintiffs' request in their Response for facilitation is **DENIED** because this Order resolves the case.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: September 30, 2020